# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHRISTOPHER BORNEMAN, )
)
               Petitioner, )
)
vs. )       **Case No. 11-CV-386-GKF-FHM**
)
ANITA TRAMMELL, Warden, )
)
               Respondent. )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 8) and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 10, 11). Petitioner filed a reply (Dkt. # 13). For the reasons discussed below, the petition for writ of habeas corpus is denied.

## *BACKGROUND*

On November 21, 2008, Oklahoma Highway Patrol (OHP) Trooper Derek Miller observed a gold colored four-door car make an unsafe lane change and fail to use a turn signal when turning into the lanes to the main toll plaza on the Turner Turnpike. The main toll plaza is located in Creek County, Oklahoma. (Dkt. # 10-2, Tr. at 103-04). After the driver paid the toll, Miller positioned his vehicle behind the car, engaged his emergency lights, and pulled the car over to the shoulder. Id. at 104. After stopping, Miller approached the vehicle, asked the driver for his license, and observed two males inside the car. Id. at 105. The driver, Petitioner Christopher Borneman, gave Miller a Missouri driver's license. Miller told Petitioner to step out of the vehicle and have a seat in the front of his patrol unit. Id. at 105-06. As Miller walked back to his patrol unit, Petitioner "took off westbound [on the turnpike] at a high rate of speed." Id. at 106.

Miller notified dispatch of his pursuit of Petitioner's vehicle. During the chase, Petitioner reached speeds in excess of 130 mph, recklessly drove in and out of traffic, and drove on the shoulders to avoid other vehicles and "stop sticks" deployed by OHP Troopers at various spots on the turnpike. Id. at 107-111. As Petitioner reached Oklahoma City, a trooper unsuccessfully attempted a tactical vehicle intervention (TVI) near the Santa Fe toll plaza on the Kilpatrick Turnpike. Id. at 112. At that time, Petitioner and the trooper were traveling approximately 115 mph. Troopers then "backed off a little bit because traffic was [] very heavy at that time of the day." Id. at 113. Petitioner exited the turnpike and approached an intersection with cars stopped ahead of him at a stop light. Id. To keep from stopping, Petitioner "made a hard right to head . . . into the Chili's parking lot." Id. Petitioner went over the curb, hit a stop sign, and a trooper successfully executed a TVI, ending the chase. Id. at 113-14; see also Dkt. # 11.

Based on these facts, Petitioner was charged by Amended Information in Creek County District Court Case No. BCF-2008-296, with Eluding/Attempting to Elude Police Officer (Count I) and Throwing Litter from Vehicle (Count II).[1] (Dkt. # 10-2, Tr. at 88). A jury found Petitioner guilty of Count I and recommended a sentence of twelve (12) years incarceration. (Dkt. # 10-6, O.R. at 136). The trial court sentenced Petitioner in accordance with the jury's recommendation. (Dkt. # 10-3, Tr. Sent. at 7). Attorney Jason Serner represented Petitioner at trial.

Petitioner, represented by attorney Mark P. Hoover, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 8-1). Petitioner raised two claims,

---

[1]The trial court dismissed Count II during trial because of improper venue. (Dkt. # 10-2, Tr. at 156-57).

| | |
|---|---|
| Proposition I: | Because the State failed to establish venue for the charge of eluding in Creek County, the matter should be remanded to the district court with instructions to dismiss. |
| Proposition II: | Appellant was prejudiced by the admission of improper evidence. |

Id. In an unpublished Summary Opinion filed July 19, 2010, in Case No. F-2009-462, the OCCA affirmed Petitioner's judgment and sentence. (Dkt. # 8-3). The OCCA found that the "trial court's ruling on defense counsel's objection to the venue was not an abuse of discretion." Id. at 1. The OCCA noted that the State showed by a preponderance of the evidence that Creek County was a proper venue. Id. at 1-2. The OCCA also noted that Petitioner "received a modest sentence compared to that possible under the statute and that requested by the prosecutor." Id. at 2.

On October 4, 2010, Petitioner filed an application for post-conviction relief. (Dkt. # 8-5 at 9). Petitioner raised five (5) propositions for relief:

| | |
|---|---|
| Proposition I: | Judge David Martin, Associate District Judge of Creek County unlawfully exercised jurisdiction and authority and wrongfully applied judicial force to bound [sic] over Defendant as clearly shown by the facts of the testimony at Preliminary Hearing and therefore denying Due Process. |
| Proposition II: | The Prosecution withheld exculpatory evidence thereby denying Defendant Due Process. |
| Proposition III: | Prosecutorial misconduct deprived Defendant of a fair trial. |
| Proposition IV: | Defendant was denied reasonably effective assistance of trial counsel in violation of the Federal and Oklahoma State Constitution. |
| Proposition V: | Defendant was denied reasonably effective assistance of appellate counsel in violation of the Federal and Oklahoma State Constitution. |
| | A. In light of the many errors and the Prejudicial effect resulting from the combined violations of this Petitioners [sic] Substantive and Procedural Rights and the fact that Petitioner has been in custody two years this Nov. 21, 2008, it is respectively requested that this Court modify the sentence to |

the lesser included offense of Misdemeanor Eluding and be given credit for time served and be released from custody.

See Dkt. # 10-5, St. App. R. at 27-57. The trial court denied the application (Dkt. # 8-5 at 9), and on June 6, 2011, the OCCA affirmed (Dkt. # 8-7).

On June 20, 2011, Petitioner commenced this federal habeas action. (Dkt. # 1). Petitioner raises four grounds of error:

Ground I:    Defendant was denied reasonably Effective Assistance of Trial Counsel in violation of the 6th Amendment of the United States Constitution.

Ground II:   Defendant was denied reasonably effective assistance of appellate counsel in violation of the 6th Amendment of the United States Constitution.

Ground III:  Prosecutorial misconduct deprived defendant of a fair trial in violation of the due process clause of the 14th amendment of the United States Constitution.

Ground IV:   Conviction was obtained by the knowing use of Perjured Testimony.

Id. Respondent argues that Petitioner's claims in Grounds I, III, and IV are procedurally barred, and that the OCCA's decision on Ground II was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 8).

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented his habeas claims to the OCCA on post-conviction appeal.[2] Therefore, he has

---

[2]The Court notes that, in Ground IV of his habeas petition, Petitioner for the first time uses the word "perjured" to describe Miller's trial testimony. However, Petitioner fairly presented the substance of Ground IV to the OCCA in Proposition II of his appeal from the denial of his application for post-conviction relief where he essentially raised the same arguments as in Ground IV of his petition for writ of habeas corpus. Compare Dkt. # 1 at 11-13 with Dkt. # 10-5, St. App.

exhausted his state court remedies.  As to a separate initial matter, Petitioner has not met his burden

of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000);

Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

## B.    Claims adjudicated by the OCCA (Grounds I and II)

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court

applies the correct federal law to deny relief, a federal habeas court may consider only whether the

state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S.

685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  "When a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

Petitioner presented his claims to the OCCA on appeal of the denial of his application for

post-conviction relief.  The OCCA held that "[a]ll legal issues previously raised and ruled upon are

---

R. at 30-31.  Construing the pro se habeas petition broadly, Haines v. Kerner, 404 U.S. 519, 520-21
(1972), the Court finds Ground IV is exhausted.  Dever v. Kansas State Penitentiary, 36 F.3d 1531,
1534 (10th Cir. 1994); Picard v. Connor, 404 U.S. 270, 275-76 (1971).

res judicata and may not be the basis of a subsequent post-conviction application." (Dkt. # 8-7 at 2). The court also held that "any issue that could have been previously raised, but was not, is waived." Id. In addition, the OCCA addressed Petitioner's claims of ineffective assistance of trial and appellate counsel on the merits. The Court will review Grounds I and II under § 2254(d) standards. Grounds III and IV are procedurally barred and are addressed in Part C, below.

### 1. Ineffective assistance of trial counsel (Ground I)

In Ground I, Petitioner argues he was denied effective assistance of trial counsel because his trial counsel "refused to seek a Writ of Prohibition from the OCCA to prevent [Petitioner] from being tried in Creek [C]ounty" based on improper venue and "failed to make any meaningful investigation to bring evidence to trial concerning the location of the initial traffic stop." (Dkt. # 1 at 5). Petitioner raised this claim in his application for post-conviction relief. In rejecting Petitioner's claim of ineffective assistance of trial counsel on post-conviction appeal, the OCCA stated, "in order to prevail on his claim of ineffective assistance of trial or appellate counsel, Petitioner must establish counsel made errors so serious the performance was deficient, and that the deficient performance deprived Petitioner of a trial and appeal whose results are reliable and fair." (Dkt. # 8-7 at 2 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984))). The OCCA denied relief, finding that "Petitioner [did] not establish[] trial or appellate counsel's performance was deficient, or that the result of his trial and appeal was not reliable and fair." Id.

It is undisputed that the traffic stop took place near the Creek/Lincoln County line. At trial, defense counsel planned to challenge venue at the close of State's evidence. (Dkt. # 10-2, Tr. at 139-40). After the state's witness, OHP Trooper Derek Miller testified, the trial court held a hearing to address defense counsel's objection on the issue of venue. Defense counsel told the trial court

that he expected Miller to testify in accordance with his preliminary hearing testimony, i.e., that Miller stopped Petitioner in Lincoln County.[3] Id. at 137-38. Instead, at trial, Miller testified he stopped Petitioner in Creek County. Defense counsel argued that at the preliminary hearing, Miller based his testimony on "what he was told by actual surveyors," but that at trial Miller based his testimony on what the prosecutor told him. Id. at 147. Defense counsel argued "that venue has not been established. . . . [T]he only thing that we have to base our venue of Creek County on is what [the prosecutor] has told Trooper Miller." Id. at 143. The State argued the stop was initiated in Creek County and when Petitioner "took off," the traffic violation in Creek County was still pending. Id. at 151. After hearing the parties' arguments regarding the issue of venue and referencing Oklahoma case law on the issue, the trial judge found as follows:

> [T]he standard of proof for venue is not beyond a reasonable doubt. It's a different standard of proof. It's a much lighter burden – essentially, it's a preponderance.
> . . .
> Given the fact that the standard of proof is not beyond a reasonable doubt, the Court does not find that venue is improper regarding the issue of the Attempting to Elude as they flow from the traffic stop that, without a doubt, the testimony was created in Creek County. I find more probably, more likely than not, that the actual stop actually occurred in Creek County.

(Dkt. # 10-2, Tr. at 155-56). The trial court sustained Petitioner's motion to dismiss the count of littering based on improper venue, id. at 156, and "overrule[d] the objection as to the count dealing with Attempting to Elude." Id. at 157.

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland, 466 U.S. 668. See 28 U.S.C. § 2254(d). "For purposes of § 2254(d)(1),

---

[3]The Court discusses and examines this testimony in greater detail below. See Part B(2)(c).

'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. at 410 (O'Connor, J. concurring)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Id.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th

Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

To satisfy the first prong of Strickland, Petitioner argues that trial counsel was deficient when he went to trial without evidence demonstrating that the eluding crime began in Lincoln County. Petitioner states, "it would seem a wholesale failure for an Attorney to go to Trial without any evidence to support his sole strategy, especially after the Defendant requested that Counsel obtain evidence from the Oklahoma Turnpike Authority (OTA), regarding the location of the Creek/Lincoln County line." (Dkt. # 1 at 6). Petitioner argues the evidence of where he was stopped "was readily available." Id. To satisfy the second prong of Strickland, Plaintiff argues "[t]here is certainly a reasonable probability that, but for Counsels [sic] lack of performance regarding this requested evidence, the Defendant would not have been found Guilty." Id.

Petitioner fails to demonstrate that the OCCA's decision, that Petitioner did not establish trial counsel was deficient or the result of his trial unfair, was contrary to or an unreasonable application of Strickland. Under Strickland, Petitioner "must show that 'counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting Strickland, 466 U.S. at 687). First, the record shows defense counsel was prepared to argue, and had supporting case law in hand, for dismissal of the case because of improper venue. This preparation negates Petitioner's claim that trial counsel failed to investigate venue. Second, Petitioner cannot show that but for counsel's alleged errors, the result of the trial

would have been different. The State presented overwhelming evidence of Petitioner's effort to elude OHP in a high-speed chase in the form of three separate videos – two from police "dash-cams" and the other from Oklahoma City Channel 9 news helicopter – and testimony from Miller and another OHP Trooper involved in the high-speed chase. Petitioner also does not allege any bias or prejudice on the part of the trial judge or member of the jury that would have resulted in a fundamentally unfair trial. Finally, the record shows Petitioner's trial counsel asked relevant questions on cross-examination, raised timely objections, and strongly argued improper venue. Petitioner fails to show that counsel's performance was deficient.

Furthermore, there is not a reasonable probability that had Petitioner's defense counsel sought "a Writ of Prohibition from the OCCA to prevent [Petitioner] from being tried in Creek [C]ounty" or made a "meaningful investigation," the outcome would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Petitioner also has not shown that the result of his trial was not reliable and fair. Therefore, Petitioner cannot satisfy the prejudice prong of <u>Strickland</u>. Petitioner fails to show that the OCCA's adjudication of his claim of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief on Ground I is denied.

## 2.    Ineffective assistance of appellate counsel (Ground II)

In Ground II, Petitioner states that he was "denied reasonably effective assistance of appellate counsel" when appellate counsel "refused" to "present all non-frivolous issues and arguments that this Petitioner had presented to him." (Dkt. # 1 at 8). Petitioner presented this claim to the state courts in his application for post-conviction relief. The OCCA affirmed the denial of post-conviction relief, stating that:

> Petitioner must establish counsel made errors so serious the performance was deficient, and that the deficient performance deprived Petitioner of a trial and appeal whose results are reliable and fair. The fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not sufficient alone to establish ineffective assistance of counsel, or to preclude enforcement of a procedural default.

See Dkt. # 8-7 at 2 (citing Strickland, 466 U.S. at 687). The standard applied by the OCCA deviates from the controlling federal standard. Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law); see also Milton v. Miller, 744 F.3d 660, 669-70 (10th Cir. 2014); Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). Because the OCCA's analysis of Petitioner's allegation of ineffective assistance of appellate counsel deviated from the controlling federal standard, it is not entitled to deference on habeas review. Cargle, 317 F.3d at 1205; see also Malicoat, 426 F.3d at 1248. Therefore, the Court analyzes Petitioner's claims of ineffective assistance of appellate counsel de novo.

Claims of ineffective assistance of appellate counsel are governed by the two-pronged standard announced in Strickland. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). The Tenth Circuit has explained that,

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly

establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle, 317 F.3d at 1202 (footnote omitted) (citation omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).

Petitioner claims his appellate counsel was ineffective for failing to raise claims of (1) ineffective assistance of trial counsel; (2) improper venue based on "newly discovered" evidence; and, (3) presentation of perjured testimony. (Dkt. # 1 at 8-9). Petitioner also claims his appellate counsel "acted more in an adversarial role, than that of an advocate for his client." Id. at 9. Petitioner argues that if appellate counsel "had done as requested, it's reasonable to assume the OCCA would not have affirmed the Judgment and Sentence on Direct Appeal." Id. at 8-9. After reviewing the record and examining the merits of the claims de novo, the Court finds no merit in Petitioner's claims.

### a.      Failure to raise ineffective assistance of trial counsel

The Court reviewed above Petitioner's Ground I claim of ineffective assistance of trial counsel under the § 2254(d) standard, giving deference to the OCCA's ruling. Applying a de novo standard of review to Petitioner's claim of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel does not change the outcome. Petitioner claims he was prejudiced by trial counsel's deficient performance because there is a reasonable probability he would have been acquitted in Lincoln or Oklahoma County. As noted above, the record clearly shows this to be a meritless claim.

Additionally, the record includes letters from Petitioner's appellate counsel to Petitioner discussing appellate counsel's opinion on trial counsel's strategy regarding venue. Appellate counsel states, "Mr. Serner thought that he could persuade the court to find that venue was improper and get the case dismissed. However, I think Mr. Serner was wrong about the ultimate disposition of the case." (Dkt. # 10-5, St. App. R. at 48). Counsel goes on to inform Petitioner that "the case was not going to go away" because "lack of venue does not preclude the re-filing of the same case in the county with the proper venue." Id. (citing Omalza v. State, 911 P.2d 286 (Okla. Crim. App. 1995)). This letter demonstrates that appellate counsel considered the performance of Petitioner's trial counsel, but ultimately chose not to raise a claim of ineffective trial counsel in the direct appeal brief. The OCCA's subsequent rejection of Petitioner's claim of ineffective assistance of trial counsel on post-conviction appeal conclusively shows that the result of the direct appeal would not have been different had appellate counsel raised a claim of ineffective assistance of trial counsel. As a result, Petitioner fails to satisfy the prejudice prong of Strickland. Thus, because the omitted claim lacks merit, Petitioner's claim of ineffective assistance of appellate counsel fails.

### b. Failure to present "new evidence"[4] of venue

Petitioner claims he gave appellate counsel evidence showing "the initial traffic stop occurred in Lincoln County," but counsel did not comply with Petitioner's request to include the evidence in the direct appeal.[5] (Dkt. # 1 at 8). Petitioner argues that this evidence, along with the evidence offered by the State (i.e. video from Miller's dash-cam), "clearly shows that [Petitioner's] Constitutional right to be tried in the County where the crime was committed was violated." Id. Petitioner concludes by arguing that "but for Counsels [sic] refusal to submit this evidence as requested by Client, ther[e] would have been a different result in the Direct Appeal by the OCCA." Id. at 9.

In Oklahoma, "a trial court's jurisdiction is triggered by the filing of an Information alleging the commission of a public offense with appropriate venue." Parker v. State, 917 P.2d 980, 985 (Okla. Crim. App. 1996) (citing OKLA. CONST. art. 7, § 9 (district courts have unlimited original jurisdiction over all justiciable matters unless otherwise provided in the constitution)). When uncertainty as to venue exists, "the accused may be tried in any county in which the evidence indicates the crime might have been committed." OKLA. CONST. art. 2, § 20. Furthermore, "[w]hen

_____

[4]Petitioner acknowledges that his "new evidence" was "readily available" at the time of trial. See Dkt. # 1 at 6. As a result, it does not qualify as "new evidence." Johnson v. Medina, 547 F. App'x 880, 885 (10th Cir. 2013) (unpublished) (describing "new" evidence as "relevant evidence that was either excluded or unavailable at trial" (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995))); Price v. Friel, 245 F. App'x 855, 856 (10th Cir. 2007) (unpublished) (rejecting as "new evidence" a psychological report supporting claim of actual innocence where the petitioner knew of the report's existence before trial).

[5]The "new evidence" cited by Petitioner is a Google map photo marking the county line and the location of an overhead sign, see Dkt. # 13 at 13, along with a cover letter from the Oklahoma Turnpike Authority (OTA), id. at 14. Petitioner placed two Xs on the photo to show where he believes the traffic stop took place. Petitioner's Xs are in Lincoln County. The letter from the OTA states that the overhead sign located west of the toll gate is in Lincoln County.

a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county." OKLA. STAT. tit. 22, § 124  Venue only needs to be proven by a preponderance of the evidence.  Bryan v. State, 935 P.2d 338, 354 (Okla. Crim. App. 1997) (citing Omalza, 911 P.2d at 294).

The Court finds Petitioner's claim of ineffective assistance of appellate counsel lacks merit. First, Petitioner's appellate counsel raised the issue of improper venue on direct appeal.  See Dkt. # 8-1 at 5.  Counsel argued that while the trial court found the "initial violation and traffic stop occurred in Creek County . . . the court did not specifically find that the pursuit began in Creek County."  Id. at 6.  Counsel further argued that the traffic violation and eluding offense were two distinct crimes and the eluding was not a continuation of the initial traffic stop.  Id. at 7-9.  As a result, counsel contended that the proper venue for eluding could not be based on the location of the unsafe lane change.  Id.  The OCCA rejected appellate counsel's arguments and found "that the trial court's ruling on defense counsel's objection to the venue was not an abuse of discretion.  The State showed by a preponderance of the evidence that the actual stop occurred in Creek County and thus the crime of eluding also began there."  (Dkt. # 8-3 at 1-2 (citing OKLA. CONST. art. 2, § 20; Bryan, 1997 OK CR 15, ¶ 24, 935 P.2d at 352-53 [sic])).[6]

_____

[6]Petitioner does not raise improper venue as a ground for relief in his habeas petition.  Had Petitioner done so, the deferential standard of § 2254(d) would apply since the OCCA reached the merits of the claim.  Additionally, the OCCA reviews challenges to venue under the provisions of the Oklahoma Constitution and not the federal constitution.  See Omalza, 911 P.2d at 294 n.8 ("[w]e analyze this issue on state grounds for the venue provision in the federal constitution refers to jurisdiction of the federal district court").  Thus, had Petitioner raised venue in his habeas petition, in addition to the deferential standard applied under § 2254(d), this Court would find the issue to be a matter of state law and review the claim to determine only whether Petitioner was deprived of a fundamentally unfair trial.  See Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998).

Second, upon review of the "new evidence" now cited by Petitioner, the Court finds he has failed to demonstrate that the result of his appeal would have been different. Even if the point where Petitioner actually stopped his car was in Lincoln County, Trooper Miller testified that he initiated the traffic stop after Petitioner made an unsafe lane change by failing to use his turn indicator as he exited the turnpike and entered the eastern end of the toll plaza. See Dkt. # 10-2, Tr. at 104. It is undisputed that those events occurred in Creek County. Id. Miller also testified that the first step he took to initiate the stop was to active the emergency equipment of his marked patrol unit just after the short median wall near the toll booth. Id. That short median wall is visible on the Google map photo and is in Creek County. See Dkt. # 13, Ex. 1. The first, second, and third elements of the crime of eluding require that the driver of a vehicle receive a red light and siren from a police officer showing the officer's vehicle to be an official highway patrol vehicle and directing the driver to bring his vehicle to a stop. See OKLA. STAT. tit. 21, § 540A; Dkt. # 10-6 at 122 (*infra* n.7). Based on Trooper Miller's uncontroverted testimony, a preponderance of the evidence demonstrates that those three elements occurred in Creek County.

Because the Oklahoma Constitution provides that "the accused may be tried in any county in which the evidence indicates the crime might have been committed," OKLA. CONST. art. 2, § 20, and venue only needs to be proven by a preponderance of the evidence, Bryan v. State, 935 P.2d 338, 354 (Okla. Crim. App. 1997) (citing Omalza, 911 P.2d at 294), Petitioner has failed to demonstrate that venue was improper in Creek County. While the "new evidence" tends to support Petitioner's claim that he stopped his vehicle and "took off" in Lincoln County, the "new evidence" does not make venue improper in Creek County or show a reasonable likelihood that the outcome of Petitioner's appeal would have been different. See State v. Love, 960 P.2d 368, 370 (Okla. Crim.

App. 1998) (finding venue proper in two different counties when separate elements of the crime occurred in different counties); Maytubby v. State, 665 P.2d 849, 852 (Okla. Crim. App. 1983) ("if an offense is committed partly in one county and partly in another, prosecution may be had in either"); cf. Carroll v. State, 347 P.2d 812, 820 (Okla. Crim. App. 1959). The evidence presented at trial shows, by a preponderance, that Petitioner made an illegal lane change in Creek County, inducing Miller to engage in actions to initiate a traffic stop, including bringing his marked unit behind Petitioner's car and activating his emergency lights and siren, all of which occurred in Creek County. Thus, Petitioner fails to satisfy the prejudice prong of Strickland and his claim of ineffective assistance of appellate counsel is without merit.

### c.      Failure to raise claim of perjured testimony

Petitioner claims his "case would have been dismissed at Trial had it not been for the State's main witness recanting his testimony from [the preliminary hearing] and knowingly presenting false testimony, and also the Prosecutor becoming an unsworn witness and knowingly presenting false testimony regarding the location of the county line." (Dkt. # 1 at 8). As part of his Ground IV claim, denied as procedurally barred in Part C, below, Petitioner argues that "Trooper Miller and the Prosecutor, Mr. Don Nelson, presented false testimony at Trial that led to conviction, but also any reasonable person . . . could only conclude that this testimony was not only false, but also knowingly and intentionally presented." See id. at 12. Petitioner further argues that the "comments so infected the Trial with unfairness as to make the resulting conviction a denial of Due Process." Id. Petitioner asserts that he presented this claim to appellate counsel, but counsel failed to raise it on direct appeal. Id. at 8.

"A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting

<u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959)).  It is well established that "the mere use of perjured

testimony without the prosecution's knowing it was perjured is not a denial of due process."  <u>Gay</u>

<u>v. Graham</u>, 269 F.2d 482, 486 (10th Cir. 1959); <u>see also</u> <u>United States v. Agurs</u>, 427 U.S. 97, 103

(1976)).  The relevant inquiry is whether (1) "the undisclosed evidence demonstrates that the

prosecution's case includes perjured testimony"; (2) "the prosecution knew, or should have known,

of the perjury"; and (3) "there is any reasonable likelihood that the false testimony could have

affected the judgment of the jury."  <u>Agurs</u>, 427 U.S. at 103.

The record demonstrates that, at the preliminary hearing, during direct examination, the

prosecutor questioned Miller about the location of the traffic stop:

Q: (prosecutor) . . . And did you make that traffic stop, sir?

A: Yes, sir.

Q: Okay.  And what happened after you had the vehicle stopped.

A: I stopped the vehicle on the west side of the toll plaza, westbound traffic.  Made a passenger side approach to the vehicle. . . . [I] asked the driver for his driver's license, which he produced to me, a Missouri license.

. . .

Q: Okay.  What happened after that, sir?

A: At that time I had the driver, Mr. Borneman, to step back and have a seat in my unit and at that time I began to walk to the rear of his vehicle to wait for him to exit and at that time he drove off at a high rate of speed.

Q: Okay.  Now, at that portion of the toll plaza, what county was that in?

A: Creek.

(Dkt. # 10, Prelim. Hr'g at 5-6).  On cross-examination, Miller gave a different opinion:

Q: (defense counsel) . . . You stated that this occurred, is it your testimony that the signal, failure to signal, was in Creek County?

A: Yes, sir.

18

Q:      Whenever you came to a stop, do you know what county that would have been or whenever he came to a stop?

A:      The way they have it, they came out and surveyed it for us, and the way they have it flagged, when I actually got behind the vehicle and made the stop we were in Lincoln.

. . .

Q:      And it's flagged?

A:      At one time it was flagged there. If you go look in the weeds you can see the flags where it goes diagonally across the turnpike.

. . .

Q:      And did somebody tell you that this was where the boundary lines were?

A:      They showed us.

. . .

Q:      How long was it before your, your supervisor showed you the boundaries or the lines and November 21st of last year when this happened?

A:      Sir, I'm not, I'm not exactly sure the exact date, but it was months prior to that.

Q:      Okay. It was in 2008?

A:      I can't even say that. It might have been '07, the exact time, I'm not sure.

Id. at 13, 17. In summary, Miller testified at the preliminary hearing that Petitioner's failure to signal a lane change occurred in Creek County, the toll plaza was in Creek County, and Petitioner stopped his vehicle in Lincoln County.

However, at trial, Miller testified that he stopped Petitioner in Creek County. (Dkt. # 10-2, Tr. at 105, 118). When confronted by defense counsel on cross-examination, Miller stated,

the boundary is diagonal across that turnpike, and like I explained, I believed it was in Lincoln County at the time of the stop. . . . I observed the violation in Creek, and I believed that the stop was in Lincoln. Further information reveals that both the violation that I observed was in Creek, and the actual stop was in Creek.

Id. at 119. Defense counsel later asked, "today, you're changing your testimony, based on what Mr. Nelson[, the prosecutor,] has told you?" Id. at 120. Miller responded, "[y]es, sir." On redirect, the prosecutor asked, "Did I tell you that I went out and looked at that ramp?" Id. at 127. Defense

19

counsel objected, but the trial court overruled, stating defense counsel opened the door on cross-examination.  The prosecutor asked again, "did I not tell you before court that I went out to inspect that area where the ramp goes on to the turnpike, that it was in Creek County?"  Id. at 129.  The prosecutor then asked, "[H]ave you had a chance to look where that ramp enters?"  Id.  Miller responded, "[y]es, sir" and stated it was in Creek County.  Id.

After carefully reviewing the state court transcripts and the record, including the Google map photograph prepared for Petitioner's mother by the OTA, see Dkt. # 13, Ex. 1, as well as the video of the stop from Trooper Miller's dash-cam, see Dkt. # 11, the Court concludes that information given by the prosecutor and Trooper Miller at trial concerning the location where the on-ramp enters the turnpike was clearly erroneous.  The Google map photograph shows that, in direct contravention of the prosecutor's testimonial statements made at trial, the on-ramp from the toll plaza enters the turnpike in Lincoln County.  In addition, the video of the stop from Trooper Miller's dash-cam clearly shows that Petitioner brought his car to a stop very near the end of the on-ramp at a point located in Lincoln County.  Moreover, Trooper Miller had testified under oath at the preliminary hearing that the county line had been surveyed and flagged, and that his supervisor had shown him the boundary line months prior to this incident.  He therefore clearly knew the ramp enters the turnpike in Lincoln County.  There can be only one reasonable conclusion – the Trooper  gave false testimony when, based on the prosecutor's leading, testimonial questions, he stated that the ramp enters the turnpike in Creek County.  Furthermore, even if Trooper Miller did not recall the precise location of the county line, he testified at the preliminary hearing that the stop was in Lincoln County, but changed his testimony at trial based upon the false information the prosecutor told him.

Significantly, however, even if Trooper Miller testified falsely at trial concerning the location of Petitioner's stopped vehicle, there is no reasonable likelihood that the false testimony affected

the judgment of the jury.  In Oklahoma, venue is a legal question and is determined solely by the

trial court.  <u>Omalza</u>, 911 P.2d at 295.  It is not a fact question for the jury.  <u>Id.</u>; <u>State v. Love</u>, 960

P.2d 368, 369 (Okla. Crim. App. 1998).  Nor is venue an element of the crime.[7]  <u>See</u> <u>Bryan v. State</u>,

935 P.2d 338, 354 (Okla. Crim. App. 1997).  Thus, the false testimony concerning the location

where the ramp enters the turnpike had no bearing on Petitioner's guilt or innocence and could not

have affected the judgment of the jury.  <u>See</u> <u>Agurs</u>, 427 U.S. at 103.

To the extent Petitioner argues that, but for the false testimony, the charge of eluding would

have been dismissed for improper venue, the Court again finds the claim lacks merit.  As discussed

above, regardless of whether Petitioner stopped his car in Creek or Lincoln counties, venue was

proper in Creek County under Oklahoma law because some of the elements of the crime of eluding

took place in Creek County.

---

[7]The trial court instructed the jury on the elements of eluding/attempting to elude a police officer, as follows:

No person may be convicted of eluding/attempting to elude a police officer unless the State has proved beyond a reasonable doubt each element of the crime.  These elements are:

First, a driver of a motor vehicle;
Second, received a red light and siren from a police officer;
Third, showing the officer's vehicle to be an official highway patrol vehicle and directing the driver to bring his vehicle to a stop;
Fourth, willfully eluded the officer/attempted to elude the officer by increasing his speed.
Fifth, while eluding/attempting to elude the officer;
Sixth, the driver endangered another person.

(Dkt. # 10-6, O.R. at 122).

For the reasons cited above, Petitioner cannot satisfy the prejudice prong of <u>Strickland</u> because he cannot show that he would have prevailed on direct appeal had appellate counsel raised a claim of perjured testimony. This claim of ineffective assistance of appellate counsel fails.

### d. Insufficient advocacy

Finally, Petitioner claims his appellate counsel "acted more in an adversarial role, than that of an advocate for his client." (Dkt. # 1). In support of his allegation, Petitioner specifically points to a letter from appellate counsel, dated December 21, 2009. <u>See id.</u> at 226-227. Petitioner quotes a section of the letter in his habeas petition. Appellate counsel wrote,

> Assuming, for the moment, that venue was properly in Lincoln County, what is your complaint? If you think that the Eluding charge had to be dismissed with prejudice because venue was not proper, you are mistaken. In the event your case in Creek County had been dismissed, you would have been transported to Lincoln County and had charges filed against you there.

<u>Id.</u> at 226. Petitioner complains that his appellate counsel sounds "more like . . . [a] District Attorney" and that he "seemed to have an untethered sense of reality when it comes to knowledge of the law." <u>Id.</u> at 9. Petitioner argues appellate counsel's "performance is certainly Constitutionally deficient and it's crystal clear that the Appellant was prejudiced by his refusal to present the evidence presented from his client." <u>Id.</u>

"Appellate counsel examines the trial record with an advocate's eye, identifying and weighing potential issues for appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 293 (2000) (Souter, J. dissenting). Counsel is "primed to attack the conviction on any ground the record may reveal." <u>Id.</u> To prevail on a claim of ineffective assistance of appellate counsel, Petitioner must show that counsel's representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 688. In the letter to Petitioner, appellate counsel thoroughly explained the evidence against Petitioner, applicable case law, and why a claim of improper venue would not result in dismissal of

the charges with prejudice.[8]  See Dkt. # 1 at 227.  Petitioner no doubt disliked the manner in which the letter was written, but the tone of the letter is insufficient for a claim of ineffective assistance of appellate counsel.  Nothing in the letter indicates appellate counsel's performance fell below the standard of objective reasonableness.  Rather, the letter shows appellate counsel had a strong grasp of the facts and issues presented at trial and was able to discern meritorious issues for appeal.  Petitioner's appellate counsel presented a well-argued direct appeal brief and raised the issue of improper venue on direct appeal.  Nothing in the record shows appellate counsel's performance fell below that of reasonable professional assistance.  The Court concludes this claim of ineffective assistance of appellate counsel has no merit.

In summary, after reviewing Petitioner's claims of ineffective assistance of appellate counsel de novo, the Court concludes that the claims have no merit.  Appellate counsel cannot be found to be deficient for failing to raise claims lacking merit.  Petitioner fails to show counsel's performance fell below an objectively reasonable standard.  Furthermore, even if appellate counsel performed deficiently, Petitioner fails to show he was prejudiced in light of the evidence presented at trial and the laws of Oklahoma.  Petitioner is not entitled to habeas relief on Ground II.

## C.    Procedural bar (Grounds III and IV)

Respondent asserts that Petitioner's claims of prosecutorial misconduct (Ground III) and use of perjured testimony (Ground IV) are procedurally barred from habeas review.  (Dkt. # 8).  The doctrine of procedural default prohibits a federal court from considering a specific habeas claim

---

[8]See also Voran v. State, 536 P.2d 1322, 1324 (Okla. Crim. App. 1975) (finding that remand of case for examination of question of venue did not violate former jeopardy principles where defendant's motion to quash the information waived any claim of former jeopardy and that even if defendant's motions did not constitute a waiver, the requirements for former jeopardy to attach had not materialized).

where the state's highest court has declined to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009); Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's claims in Grounds III and IV are procedurally barred from this Court's review. In its order affirming the denial of Petitioner's application for post-conviction relief, the OCCA stated "any issue that could have been previously raised, but was not, is waived, and may not be the basis of a subsequent post-conviction application. (Dkt. # 8-7 at 2 (citing OKLA. STAT. tit. 22, § 1086; Rules 2.1(B) & 4.2(A), Rules of the Oklahoma Court of Criminal Appeals)). The state court's procedural bar as applied to these claims was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. In addition, based on OKLA. STAT. tit. 22, § 1086, the OCCA routinely bars claims that could have been but were not raised on direct appeal. As a result, the bar imposed by the OCCA on the claims raised in Grounds III and IV was based on state law grounds adequate to preclude federal review.

Because of the procedural default, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded

. . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Examples of such external factors include the discovery of new evidence, a change in the law, and

interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice'

resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982).

A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is

"actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494

(1991).

In this habeas action, Petitioner states that he asked his appellate counsel to raise the claims

of prosecutorial misconduct and perjured testimony on direct appeal, but he "refused."[9] (Dkt. # 1

at 11, 13). To show cause based on ineffective assistance of appellate counsel, Petitioner must show

that appellate counsel's performance fell below an objectively reasonable standard and that he was

prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 687-88; see also Coleman,

501 U.S. at 754. The Court rejected Petitioner's claim of ineffective assistance of appellate counsel

for failing to allege use of perjured testimony in Part B(2)(b), above. Therefore, ineffective

assistance of appellate counsel cannot serve as cause to overcome the procedural bar applicable to

Ground IV, use of perjured testimony.

Petitioner also fails to make the necessary showing as to Ground III. Petitioner's Ground

III claim of prosecutorial misconduct arises from the prosecutor's exchange with Trooper Miller

during re-direct examination at trial. Petitioner contends the prosecutor became an unsworn witness

against him when he asked Miller, "did I not tell you before court that I went out to inspect that area

---

[9]In his habeas petition, Petitioner does not raise a separate claim of ineffective assistance of appellate counsel for failing to raise a claim of prosecutorial misconduct. However, he mentions the actions of the prosecutor in Ground II of his petition. See Dkt. # 1 at 8.

where the ramp goes on the turnpike, that it was in Creek County?" (Dkt. # 10-2, Tr. at 128-29). Although Petitioner's trial counsel objected, the objection was overruled. Id. at 128.

"'Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'" Malicoat, 426 F.3d at 1257 (quoting United States v. Young, 470 U.S. 1, 8 n.5 (1985) (quoting ABA Standards for Criminal Justice 3-5.8)). However, "a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process." Duckett v. Mullin, 306 F.3d 982, 988 (10th Cir. 2002). Petitioner fails to show the prosecutor's remark so infected the trial as to make it fundamentally unfair. The prosecutor's improper comments concerned the issue of venue, not Petitioner's guilt or innocence of the crime of eluding. Additionally, the State presented overwhelming evidence of Petitioner's guilt. Thus, even if appellate counsel performed deficiently in failing to raise the claim of prosecutorial misconduct on direct appeal, Petitioner cannot show he was prejudiced by the deficient performance. See supra. Petitioner's claim of ineffective appellate counsel cannot serve as cause to overcome the procedural bar applicable to Ground III.

Alternatively, Petitioner argues the existence of "cause and prejudice" that "prevented this Petitioner from raising the grounds for relief in the instant case on Direct Appeal, that are external to the Defense, are objective factors, and was [sic] caused by governmental interference." (Dkt. # 13 at 5-6). Plaintiff claims he was unable to "adequately prepar[e] for the Direct Appeal" because he "never got to view Trooper Miller's DVD prior to the Direct Appeal Brief being submitted on December 29, 2009." Id. at 6, 10. After his conviction, Petitioner requested a copy of the DVD from the Creek County Court Clerk, but the Clerk denied the request because the court "did [not]

have a copy of the DVD." Id. at 6. Petitioner claims his parents also requested a copy of the DVD and the Clerk denied their request for the same reason. Id. Petitioner claims it took a "Court Order from the U.S. District Court, Western District of Ok. (Case No. CIV-09-187-R)" to get copies of the videos presented at trial.[10] Id. at 6, 18-21. Petitioner alleges that after the DVDs arrived at the Creek County Jail, he "never got to view Trooper Miller's DVD" because that DVD "was a different format" and the "Jail Administrator [did not] compl[y] with the Fed[eral] Court order and brought [sic] another DVD player that was multi-format." Id. at 6.

The Court rejects Petitioner's claim of governmental interference on three grounds. First, Petitioner was represented by counsel on direct appeal and counsel likely had access to and was able to view the video from Miller's dash-cam. Second, Petitioner was in custody at the Creek County Jail when he requested the DVDs from the Court Clerk. Even though Petitioner did eventually view two of the three videos, jail and prison facilities place restrictions on the types of items inmates are allowed to receive without prior approval. Petitioner does not claim he had permission from jail administrators to have the DVDs when he originally requested the videos. Finally, the record shows that the federal court order by the Western District of Oklahoma in a 42 U.S.C. § 1983 action filed by Petitioner against the OHP Troopers, was issued at the request of the defendants in that case, not

_____

[10]Petitioner engaged in a flurry of activity after his conviction, lodging complaints against both the district judge who bound Petitioner over for trial in Creek County and the prosecutor (Dkt. # 10-5, St. App. R. at 50-54). He also filed a 42 U.S.C. § 1983 civil rights action alleging excessive use of force against the OHP Troopers involved in Petitioner's high speed chase. (Dkt. # 13 at 6).

Petitioner.[11]   For those reasons, the Court finds that there was no governmental interference sufficient to serve as "cause" to overcome the procedural bar.

Petitioner's only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  However, nowhere in his petition does Petitioner claim to be actually innocent of the crime for which he was convicted.  Instead, Petitioner claims the case would have been dismissed had venue been proper and that but for trial counsel's alleged deficient performance, "[t]here is certainly a reasonable probability that . . . the [Petitioner] would not have been found Guilty."  These are not claims of actual innocence.  Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes that Grounds III and IV are procedurally barred.  Coleman, 501 U.S. at 724.  For that reason, Petitioner's request for habeas corpus relief on Grounds III and IV shall be denied.

**D.     Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of

---

[11]See Dkt. # 13 at 18-21. On August 27, 2009 Defendants Timothy Rozier and Captain Maples filed a motion to allow Plaintiff access to the DVDs.  Defendants stated, "Defendants request this Court issue an Order allowing Defendants to send Plaintiff copies of the DVD exhibits attached to Defendants' Motion for Summary Judgment to be held by the Jail Administrator for Plaintiff's review in accordance with the Detention Center's policies."  Id. at 20.

appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.  A separate judgment in favor of Respondent shall be entered in this matter.

3.  A certificate of appealability is **denied**.

**DATED** this 9th day of July, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT